

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
~~JOHN REEVES SHEPPERD~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable W. J. Townsend
County Attorney
Angelina County
Lufkin, Texas

Dear Sir:

Opinion No. O-6629
Re: Under the given facts does
the Commissioners' Court of
Angelina County have the
authority to use a portion
of the air port funds to
gravel the road in question?

Your request for an opinion on the above question
reads as follows:

"Angelina County voted a bond issue to
purchase and establish an airport. With a por-
tion of the proceeds of said bond issue,
land was purchased for the establishment of an
airport, which airport has been established on
the land purchased by the county for such purpose.

"The airport is located about 3/4 of a mile
from the state highway leading to Lufkin, which
is a hard surfaced highway. To make the airport
available for the purpose for which it is built,
it is necessary that said road leading from the
airport to said highway be graveled or hard sur-
faced. Would it be lawful for the Commissioners'
Court to use a portion of the airport funds to
gravel or hard surface the 3/4 of a mile of the
public road leading from the airport to said
state highway, to make said airport available in
all kinds of weather?"

Article 1269h, Vernon's Annotated Civil Statutes, is
in part as follows:

"Section 1. A- That the governing body of any
incorporated city in this State may receive through
gift or dedication, and is hereby empowered to ac-

quire, by purchase without condemnation or by pur-
chase through condemnation proceedings, and there-
after maintain and operate as an airport, or lease,
or sell, to the Federal Government, tracts of land
either within or without the corporate limits of
such city and within the county in which such city
is situated, and the Commissioners' Court of any
county may likewise acquire, maintain and operate
for like purpose tracts of land within the limits
of the county.

"  .  .  .  .

"Sec. 2.  (a) For the purpose of condemning or
purchasing, either or both, lands to be used and
maintained as provided in Section 1 hereof, and
improving and equipping the same for such use, the
governing body of any city or the Commissioners'
Court of any county, falling within the terms of
such Section, may issue negotiable bonds of the
city or of the county, as the case may be, and
levy taxes to provide for the interest and sink-
ing funds of any such bonds so issued, the au-
thority hereby given for the issuance of such
bonds and levy and collection of such taxes to be
exercised in accordance with the provisions of
Chapter 1 of Title 22 of the Revised Civil
Statutes of 1925.

"  .  .  .  .

"Sec. 3.  Any air port acquired under and by
virtue of the terms of this Act shall be under the
management and control of the governing body of the
city or the Commissioners' Court of the county ac-
quiring the same, which is hereby expressly author-
ized and empowered to improve, maintain and conduct
the same as an air port, and for that purpose to
make and provide therein all necessary or fit im-
provements and facilities and to fix such reason-
able charges for the use thereof as such governing
body or Commissioners' Court shall deem fit, and to
make rules and regulations governing the use there-
of.  All proceeds from such charges shall be devoted
exclusively to the maintenance, upkeep, improvement
and operation of such air port and the facilities,
structures, and improvements therein,"  .  .  .  .

Chapter 1, Title 22, of the Revised Civil Statutes of Texas, 1925, is in part as follows:

"Article 701. Shall hold election. The bonds of a county or an incorporated city or town shall never be issued for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property tax payers of such county, city or town.

"Art. 702. Question submitted. In all cases when the governing body of a county, city or town shall order an election for the issuance of the bonds of the county, city or town or of any political subdivision or defined district of a county, such body shall at the same time submit the question of whether or not a tax shall be levied upon the property of such county, city or town, political sub-'division or defined district for the purpose of paying the interest on the bonds and to create a sinking fund for the redemption of the bonds.

"Art. 703. Submission of proposition. The proposition to be submitted shall distinctly specify:

1. The purpose for which the bonds are to be issued;

2. The amount thereof;

3. The rate of interest;

4. The levy of taxes sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity;

5. The maturity date, or that the bonds may be issued to mature serially within any given number of years not to exceed forty."

In the case of Carroll vs. Williams, County Treasurer, et al, 202 S. W. 504, the Supreme Court had under consideration the power of the Commissioners' Court to transfer money from one fund to another. While the facts in that case are somewhat different from those here being considered, the principle of law is, in our opinion, the same. In that case the Commissioners' Court of Jefferson County, as part of a general scheme for exacting from taxpayers and expending on roads and bridges more money than the Constitution of this State permits to be raised by taxation and expended for that

purpose, deliberately and purposely levied, for various other purposes defined by said Constitution, which were known by that Court at the time of such levies thereof, to be much greater in amounts than were required to meet the current expenditures for such other purposes, and afterwards transferred such excesses in such funds to the Road and Bridge Fund, and expended same accordingly.  In holding such practice to be unlawful, the Court laid down the following principles of law which are applicable here:

> "Going to the real gist of the main issue before us, section 9 of article 8 of our state Constitution, supra, inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose.  The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively.  But that is not all.  The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or class of purposes.  By necessary implication said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever.  Those constitutional provisions control, not only the raising, but also the application, of all such funds; and such is the legal effect of articles 2242 and 7357, supra, when properly construed and applied.

> "True, the Constitution does not say, in so many words, that money raised by a county, city or town, by taxation for one such purpose shall never be expended for any other purpose -- not even for another of the five general classes of purposes defined and approved in said section 9 - but that, we think, is its plain and certain meaning and legal effect.  The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled, as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the

expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly for one such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year shall not exceed the prescribed maximum."

In the case of Moore, County Judge, et al vs. Coffman, et al, 200 S. W. 374, the Supreme Court was considering whether the Commissioners' Court of Knox County could use the proceeds of bonds voted for building a bridge across the Brazos River at a designated place for building a bridge at another place. In holding that the proceeds of said bonds must be used for the purpose stated, the Court held as follows:

"It was the duty of the Commissioners' Court under the statute (art. 606), in stating the proposition to be voted on in the bond election, to specify, both in its order for the election and in the notice of the election, the purpose for which the bonds were to be issued. The reason of this requirement is that the voters in such an election are entitled to know, beforehand, the specific use to which their taxes levied in virtue of the election are to be put. The design of the statute is that the purpose of the bonds shall be stated in such way as to fairly and fully apprise the voters of it. No particular form is prescribed for its statement, and the way in which it shall be stated so as to accord with the spirit of the statute is necessarily left to the Commissioners' Court. In this instance, the court in defining the proposition in respect to the purpose of the bonds saw fit to declare that it was not only to construct these two bridges, but to construct them at certain designated locations. Stating the purpose in this manner contravened no law; hence the court was privileged to thus announce it. Since the court by deliberate action made the location of the bridges a part of the proposition submitted, it is fair to conclude that their erection at the locations named constituted in the court's mind an essential part of the purpose of the bonds. If so, it must have intended that the voters in the election should understand that included in such purpose was the building of the bridges at these particular places. That the voters did so understand can hardly be denied.

"If it was within the lawful power of the
court to so declare the purpose of the bonds; if
it intended that the voters should understand
their purpose to be the erection of the bridges
at these particular crossings; and the voters
cast their ballots accordingly, we think that is
an end of the question.  It then becomes simply a
matter of keeping faith with those whose will the
election expressed.

"To say, as is urged, that the incorporation
of the location of the bridges in the Commissioners'
Court's statement of the purpose of these bonds was
surplusage and is therefore of no effect, is to deny
to those courts the power of so declaring the purpose
of a bond issue of this character as a means of fully
acquainting the property owning voters of a county
with the exact use intended to be made of the bonds.
For if the court had the power to include in its
definition of the purpose of the bonds so material
a matter as the proposed locations of the bridges,
that part of the stated purpose cannot be regarded
as mere surplusage.  It can be so treated only upon
the theory that the court in so including it tran-
scended its authority, and for that reason is not
bound by it.  We decline to so hold.  The specific
use to which it is intended by public officials that
public moneys shall be applied is always of concern
to those upon whom taxation rests the burden of the
expenditure.  In the matter of bond issues authorized
by the vote of the citizenship affected, in the sub-
mission of the proposition the law encourages, rather
than frowns upon, a full and definite statement of
their purpose.  The location of an expensive public
improvement dependent upon such bond issues is fre-
quently of as prime importance as its construction.
In such cases it is only fair to the voters in the
election called to determine the matter to inform
them in advance of the intended location, so that
the actual merits of the given proposal, into which
the question of location may largely enter, shall
decide the contest.  When this is done, the location
is a part of the vote and is entitled to an equivalent
protection.  We can perceive nothing in such a course
that either trenches upon or exceeds the authority
possessed in these matters by Commissioners' Courts
or municipal bodies, or that amounts, as is contended
to a surrender of their duty into other hands."

In the case of Lewis et al vs. City of Fort Worth et al, 89 S. W. (2d) 975, the Supreme Court was considering whether or not the City Council had authority to use the proceeds of the sale of certain bonds for various named purposes, and the Court, in holding that such purposes were not foreign to the purposes for which said bonds were voted, laid down the following general rule of law:

"It is elementary that the proceeds of bonds voted by the people must be expended for the purposes for which they were voted."

Angelina County having voted bonds for the purpose of purchasing and establishing an air port, it is our opinion that the proceeds of said bonds cannot be used to gravel or hard surface the public road leading from said air port to the State Highway, as that would be using the proceeds of said bonds for a purpose different from that for which said bonds were voted and would be in violation of the above rules of law.

We trust that this satisfactorily answers your inquiry.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By  /s/ Jas. W. Bassett

Jas. W. Bassett
Assistant

JWB:LJ:EAC

APPROVED JUN 26 1945

/s/ Carlos C. Ashley

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE

BY B W B
CHAIRMAN